### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

**Riverview Health Institute LLC,** *et al.***,**

    *Plaintiffs,*

v.                                                                   **Case No. 3:07-cv-354**
                                                                          **Judge Thomas M. Rose**

**Medical Mutual of Ohio,** *et al.***,**

    *Defendants.*

---

**ENTRY AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS,** (DOC. 10)**, AND TERMINATING CASE.**

---

Pending before the Court is Defendants' Motion to Dismiss. Doc. 10. Defendants urge the Court to dismiss all of Plaintiffs' claims. Plaintiffs state federal claims under the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO") and the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), claims which create subject matter jurisdiction for this court over all claims stated in the complaint. Because Plaintiffs' RICO claims are reverse-preempted under the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.*, and because Plaintiffs have not alleged that claimants have exhausted their administrative remedies under ERISA, Plaintiffs' claims under RICO and ERISA will be dismissed. Plaintiffs' request to amend their complaint to add an additional federal claim of estoppel will be denied due to the futility of the claim. As this will dispose of all of Plaintiffs' stated and potential claims under federal law, the Court will decline to exercise jurisdiction over Plaintiffs' state law claims.

**I.     Background**

All Plaintiffs in this action are out-of-network providers of health-care services that do not maintain any provider agreements with health insurance carriers. Doc. 1 at ¶¶ 13-14. Plaintiff Riverview Health Institute LLC is a provider of hospital services, located in Dayton, Ohio. Plaintiff Middletown Surgical Associates, Inc. is authorized to do business in the State of Ohio as the Surgical Weight Loss Center and is the professional practice corporation of Dr. David J. Fallang, a bariatric and general surgeon. Surgical Weight Loss Center provides physician bariatric and general surgery services at Riverview Health Institute. Plaintiff Oak Leaf Health Group LLC is authorized to do business in the State of Ohio as St. Elizabeth's Laboratories and provides laboratory services to patients of Riverview Health Institute and Surgical Weight Los Center. All plaintiffs do their business at One Elizabeth Place, Dayton, Ohio.

Defendant Medical Mutual of Ohio is a mutual health insurance company, while the individual defendants are officers thereof: Defendant Kent W. Clapp is its President, David G. Quiring is its Vice President for Claims Operations and Kathy Schneeberger is its Senior Financial Investigator.

Plaintiffs "operate exclusively on an out-of-network basis," taking compensation for their services "by direct patient payments [or] private insurance proceeds, to the extent of patient insurance coverage that allows for 'out-of-network" or ('non-participating') hospital services." Doc 1 at ¶ 13. See also *id.* at ¶ 14.

According to the Complaint, Medical Mutual of Ohio has "acted to delay, diminish and deny payment of...lawful claims of patient-insureds as submitted by out-of-network health providers...through a scheme or artifice, utilizing the U.S. Mail and demonstrating a specific intent

to defraud the patient-insureds and out-of-network health-care providers in violation fo 18 U.S.C. § 1341." Doc. 1 at ¶ 51. Moreover, the complaint contends, Medical Mutual of Ohio acted unlawfully and inaccurately to underestimate and reduce the "usual, customary and reasonable" amounts due to out-of-network health providers utilizing the U.S. mail. *Id.* at ¶52. Additionally, the Complaint avers that Medical mutual of Ohio has "inappropriately bundled provider services and procedures" utilizing the U.S. mail. *Id.* at ¶ 54.

Plaintiffs' verified complaint sets forth seven claims for relief: first, conspiracy to violate 18 U.S.C. § 1962(a) in violation of 18 U.S.C. § 1962(d); second, violation of 18 U.S.C. § 1962(c), third, conspiracy to violate 18 U.S.C. § 1962(c) in violation of 18 U.S.C. § 1962(d); fourth, denial of benefits under ERISA, 29 U.S.C. § 1132(A)(1)(B); fifth, state-based breach of contract, sixth, state-based common-law fraud, seventh, state-based tortious interference with business relationships. The first four arise under the federal RICO statute, the fifth under the federal ERISA statute, and the court has subject matter jurisdiction over the last three by virtue of 28 U.S.C. § 1367.

**II.     Standard of Review**

The purpose of a motion under Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint. When considering a motion to dismiss pursuant to Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 515 (1972). Although the Court must liberally construe the complaint in favor of the party opposing the motion to dismiss, *Kugler v. Helfant*, 421 U.S. 117, 125-26 n.5 (1975), it will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *Blackburn v. Fisk Univ.*, 443 F.2d

121, 124 (6th Cir. 1971); *Sexton v. Barry*, 233 F.2d 220, 223 (6th Cir. 1956). The Court will, however, indulge all reasonable inferences that might be drawn from the pleading. *Fitzke v. Shappell*, 468 F.2d 1072, 1076-77 n.6 (6th Cir. 1972).

The Court is mindful that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). See also *McLain v. Real Estate Bd.*, 444 U.S. 232, 246 (1980); *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983). Because a motion under Rule 12(b)(6) is directed solely to the complaint itself, *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983); *Sims v. Mercy Hosp.*, 451 F.2d 171, 173 (6th Cir. 1971), the focus is on whether the plaintiff is entitled to offer evidence to support the claims, rather than on whether the plaintiff will ultimately prevail. *Scheuer*, 416 U.S. at 236; *McDaniel v. Rhodes*, 512 F. Supp. 117, 120 (S.D. Ohio 1981).

A complaint need not set down in detail all the particularities of a plaintiff's claim against a defendant. *United States v. School District of Ferndale*, 577 F.2d 1339, 1345 (6th Cir. 1978). Federal Rule of Civil Procedure 8 requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a complaint must afford the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See *Dunn*, 697 F.2d at 125; *Westlake*, 537 F.2d at 858. Indeed, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). Thus, this Court will grant a motion for dismissal under Rule 12(b)(6) if there is an absence of law to support a claim of the type alleged, if the facts alleged are insufficient to make

a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. See *Rauch v. Day & Night Mfg.*, 576 F.2d 697, 702 (6th Cir. 1978); *Brennan v. Rhodes*, 423 F.2d 706 (6th Cir. 1970).

### III.    **Analysis** of RICO Claims

Plaintiffs' first, second and third claims assert violations of RICO stemming from the manner in which Defendants processed insurance claims. Defendants assert that the McCarran-Ferguson Act preempts Plaintiffs' RICO based claims. The McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.*, declares that "[t]he business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a). Later, the act states "No act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance...unless such act specifically relates to the business of insurance ..." 15 U.S.C. § 1012(b). The Sixth Circuit has ruled:

> Federal law thus provides for "reverse preemption" in the realm of regulating the insurance business. *AmSouth Bank v. Dale*, 386 F.3d 763, 780-83 (6th Cir. 2004) (discussing the concept of reverse preemption under the McCarran-Ferguson Act). A general federal law that does not specifically relate to the business of insurance, therefore, cannot be construed to "invalidate, impair, or supersede" a state law enacted to regulate the insurance business. 15 U.S.C. § 1012(b).

*Genord v. Blue Cross & Blue Shield of Michigan*, 440 F.3d 802, 805 (6th Cir. 2006).

The Sixth Circuit determines whether a federal statute is subject to reverse-preemption according to a three-part test:

> The threshold question is whether the federal statute at issue "specifically relates to the business of insurance." If it does, then the McCarran-Ferguson Act by its own terms does not allow for reverse

> preemption. See 15 U.S.C. § 1012(b) (setting forth as an exception to the reverse-preemption rule a case in which the federal law in question "specifically relates to the business of insurance"). If not, then there are two remaining questions that both must be answered in the affirmative in order to conclude that application of a federal law is reverse preempted by the existence of a state law. One is whether the state statute at issue was "enacted ... for the purpose of regulating the business of insurance." The other is whether the application of the federal statute would "invalidate, impair, or supersede" the state statute. *Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384, 392 (6th Cir. 1996) (setting forth the McCarran-Ferguson Act analysis).

*Genord v. Blue Cross & Blue Shield of Michigan*, 440 F.3d 802, 805-06 (6th Cir. 2006).

Thus, the first question to be asked in deciding whether the McCarran-Ferguson Act causes Title 39 Ohio Revised Code, and more specifically, sections 3901.21, 3901.3810, and 3901.3812, to preempt RICO in that matters before the Court is whether the federal statute at issue, RICO, specifically relates to the business of insurance. The Sixth Circuit has already held that it does not. "RICO does not specifically relate to the business of insurance…." *Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384, 391 (6th Cir. 1996). Thus, the Court must proceed to ask, whether the state statute at issue was enacted for the purpose of regulating the business of insurance and whether the application of the federal statute would "invalidate, impair, or supersede" the state statute.

For the purposes of reverse preemption analysis under the McCarran-Ferguson Act, a state law is enacted for the purpose of regulating the business of insurance if the activities at issue are part of the business of insurance and the state law possesses the aim of regulating those activities. *Owensboro Nat'l Bank v. Stephens*, 44 F.3d 388, 392 (6th Cir. 1994). The Supreme Court has identified three criteria relevant in determining whether a particular practice is part of the "business of insurance" for purposes of the McCarran-Ferguson Act:

> first, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry. None of these criteria [however] is necessarily determinative in itself….

*Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129 (1982).

In the instant case, Plaintiffs repeatedly assert that Defendants have violated a duty to pay amounts owed to the insureds, which is perhaps the most integral part of the policy relationship between the insurer and the insured. The Supreme Court has found the actual performance of an insurance contract to satisfy all three *Pireno* factors. *United States Dep't of the Treasury v. Fabe*, 508 U.S. 491, 503-04 (1993).

The last question is whether the application of the federal statute would "invalidate, impair, or supersede" the state statute. Ohio has established an administrative regulatory body for overseeing the insurance industry in Ohio. As one court has put it:

> Ohio has enacted laws for the purpose of regulating unfair and deceptive acts of insurance companies. See Ohio Rev. Code § 3901.19-26. The Ohio legislature has conferred upon the Ohio Department of Insurance and the Superintendent of Insurance broad powers in regulating insurance trade practices. See *id.* at § 3901.01; see also *Strack v. Westfield Companies*, 515 N.E.2d 1005 (Summit Cty. 1986). Specifically, § 3901.21(A) proscribes any statements "misrepresenting the terms of any policy...or the benefits or advantages promised thereby...." As defendants argue, the crux of plaintiff's RICO claim is that [the defendant insurance company] misrepresented plaintiffs' benefits. Furthermore, the Ohio legislature has provided that those violating § 3901.21 are subject to enforcement by the Superintendent. Ohio Rev. Code § 3901.22. These statutes clearly demonstrate the state's effort to regulate the conduct complained of in this case. Accordingly, the third prong...is satisfied.

*Everson v. Blue Cross and Blue Shield of Ohio*, 898 F. Supp. 532, 544 (N.D. Ohio 1994). The Court also ruled as to

> whether the RICO statute would invalidate, impair, or supersede the state law. The Ohio legislature has chosen to have Ohio insurance regulatory law enforced solely by the Superintendent of Insurance. There is no private cause of action under § 3901.21. *Strack v. Westfield Companies*, 33 Ohio App.3d 336, 338, 515 N.E.2d 1005 (Summit County 1986). Thus, application of RICO would impair the enforcement of Ohio insurance law.

*Everson v. Blue Cross and Blue Shield of Ohio*, 898 F. Supp. 532, 544 (N.D. Ohio 1994).

The Sixth Circuit has found the same:

> sections 3901.21-.22[1] of the Ohio Revised Code provide detailed regulation and remedies for unfair and deceptive acts, including making misrepresentations and providing rebates. The different liability under Ohio law for violations, as well as different standards of proof necessary to demonstrate misrepresentations, means that RICO does impair the ability of Ohio to regulate this type of behavior. In particular, RICO calls for treble damages, which Ohio law does not. RICO requires some showing of fraud, whereas Ohio law flatly outlaws rebates in auto insurance regardless of whether fraud is involved. Finally, Ohio law may employ a different standard than the one under RICO to determine when a "misrepresentation" violates its statute. In short, applying RICO to insurance companies would subject them to a different standard of behavior than the one envisioned by Ohio. By holding insurance companies liable under a federal law, such as RICO, when Ohio law provides for no liability, RICO would impair the regulatory framework within which Ohio expects its insurance companies to do business.

*Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384, 392 (6th Cir. 1996).

Plaintiffs' only protest is that the Court must take consideration of the case of *Humana v. Forsyth*, 525 U.S. 299 (1999). *Humana*, however, affirmed that

---

[1] These same provisions are at issue in the case before the Court.

-8-

> The McCarran-Ferguson Act…precludes application of a federal statute in face of state law "enacted ... for the purpose of regulating the business of insurance," if the federal measure does not "specifically relat[e] to the business of insurance," and would "invalidate, impair, or supersede" the State's law. See *Department of Treasury v. Fabe*, 508 U.S. 491, 501 (1993). RICO is not a law that "specifically relates to the business of insurance." This case therefore turns on the question: Would RICO's application to the…claims at issue "invalidate, impair, or supersede" [the State's] laws regulating insurance?

*Humana Inc. v. Forsyth*, 525 U.S. 299, 307 (1999).

*Humana* gave guidance to this question by stating:

> When federal law does not directly conflict with state regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, the McCarran-Ferguson Act does not preclude its application.

*Id.*, at 310.

Unlike the regime analyzed in *Humana*, a RICO action would frustrate the administrative regime of the state of Ohio. Ohio has created an administrative regime to oversee the insurance industry and demands exhaustion of this regime's remedies before allowing one to pursue a private action. See *Pappas & Associates Agency, Inc. v. State Auto. Mut. Ins. Co.*, 1998 WL 15605, 2 (Ohio App. 1998) ("[A Plaintiff] may file his request for review with the superintendent of insurance, or, [the Plaintiff] may forgo taking any further action on the matter. Because of the doctrine of administrative exhaustion, [the Plaintiff] may not by-pass administrative review and file his claim directly in the common pleas court."). Thus, all pertinent case law directs this Court to dismiss Plaintiffs' RICO claims.

Because each factor of the *Kenty* test is fulfilled, the McCarran-Ferguson Act precludes application of RICO in this case. The Court will dismiss counts One, Two and Three of the Complaint.

**IV. Analysis of ERISA Claims**

Defendants assert that Plaintiffs' claims under ERISA must be dismissed because Plaintiffs have not exhausted the administrative remedies established under the ERISA plans pursuant to which they assert their claims, and because the ERISA plans at issue prohibit assignment. "[I]t is well settled that ERISA plan beneficiaries must exhaust administrative remedies prior to bringing a suit for recovery on an individual claim...." *Hill v. Blue Cross and Blue Shield of Mich.*, 409 F.3d 710, 717 (6th Cir. 2005). Even assignees of ERISA benefits must establish the exhaustion of ERISA plan administrative remedies. *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 91 (6th Cir. 1997).

The exhaustion requirement is excused when resort to the administrative procedures is futile or an inadequate remedy. *Weiner*, 108 F.3d at 90. The standard for adjudging the futility of resorting to the administrative remedies provided by a plan is whether a clear and positive indication of futility can be made. *Coomer v. Bethesda Hospital, Inc.*, 370 F.3d 499, 505 (6th Cir. 2004). A plaintiff must show that "it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419 (6th Cir. 1998)(quoting *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996)).

The instant case is substantially similar to another recent case in this district, which this Court finds persuasive:

> Plaintiff contends that it has complied with the requirements for notice pleading under Fed. R. Civ. P. 8. However, the relevant

> authorities indicate that dismissal for failure to exhaust administrative remedies is warranted where plaintiff fails to allege any factual basis for the claim of futility. See *Coomer*, 370 F.3d at 505 ("Plaintiffs have not alleged any factual basis for their claim of futility other than the denial of benefits to Coomer."); *Weiner*, 108 F.3d at 91 (affirming dismissal under Rule 12(b)(6), stating, "Although [plaintiff] contends that such exhaustion would be futile, he has not alleged any factual basis for this claim.") See also *Borman v. Great Atlantic & Pacific Tea Co.*, 64 Fed. App'x 524 (6th Cir. 2003)(failure to allege facts supporting futility warranted dismissal of complaint); *Zhou v. Guardian Life Ins. Co. of America*, 295 F.3d 677, 680 (7th Cir. 2002) (affirming dismissal where plaintiff proffered only "bald allegations and conclusory statements" in support of futility argument; "When a party has proffered no facts indicating that the review procedure that he initiated will not work, the futility exception does not apply."); *Byrd v. MacPapers, Inc.*, 961 F.2d 157, 160-61 (11th Cir. 1992)(dismissal for failure to exhaust administrative remedies upheld where plaintiff failed to allege whether she pursued any available relief under claims procedures).

*Barix Clinics of Ohio, Inc. v. Longaberger Family of Companies Group Medical Plan*, 459 F. Supp. 2d 617, 622 (S.D. Ohio 2005).

More pertinently, Judge Graham determined:

> Even assuming that plaintiff is a beneficiary by reason of the assignments from its patients, the complaint fails to adequately plead that the Plan failed to establish or follow the required claims procedures. Plaintiff claims that it did not receive adequate notice of the reasons for the denial of the claims for benefits. However, plaintiff has not attached a copy of the Plan to its complaint. There are no facts alleged which are sufficient to demonstrate that the Plan procedures do not comply with the requirements of ERISA, or that the plan requirements were not followed in this case. Plaintiff does not allege that the patients who were plan participants and beneficiaries never received adequate notice.

*Barix Clinics of Ohio, Inc. v. Longaberger Family of Companies Group Medical Plan*, 459 F. Supp. 2d 617, 622-23 (S.D. Ohio 2005).

While Plaintiffs describe some efforts to obtain payments from Medical Mutual of Ohio, there are no allegations detailing any efforts to pursue administrative remedies under any of ERISA plans. Indeed, no ERISA plans are even identified in the complaint. Instead, Plaintiffs baldly assert that any attempt to utilize the administrative process would be futile. Doc. 1 at 46, doc. 11 at 37-38.

"In order to successfully argue the futility of exhaustion, a claimant bears the burden of proving futility beyond mere conclusory allegations. Rather, the claimant must make a 'clear and positive' indication of futility." *Harris v. Pepsi Bottling Group, Inc.*, 438 F. Supp. 2d 728, 731 (E.D. Ky. 2006). Because Plaintiffs' failure to exhaust administrative remedies is sufficient grounds for dismissing Plaintiff's complaint, the Court need not consider the ramifications of any anti-assignment provision in the ERISA plans.

**V.      Federal Estoppel Analysis**

Plaintiffs' response, doc. 11, contains a request for permission to amend their complaint to add, among other things, a claim for estoppel under federal common law. According to Plaintiffs, Defendants paid claims that Defendants believed were assigned to them for more than two and a half years. Plaintiffs claim that repeated acceptance of assignments over a several year period is a representation that such assignments were acceptable.

Federal Rule of Civil Procedure 15(a) governs the requested permission to amend pleadings:

> A party may amend the party's pleadings once as a matter of course
> at any time before a responsive pleading is served or, if the pleading
> is one to which no responsive pleading is permitted and the action has
> not been placed upon the trial calendar, the party may so amend it at

> any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and *leave of court shall be freely given when justice so requires*.

Fed. R. Civ. P. 15(a) (emphasis added).  In evaluating when the interests of justice require leave to amend a pleading, courts consider several factors, including "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Coe v. Bell,* 161 F.3d 320, 341 (6th Cir. 1998) (quoting *Brooks v. Celeste,* 39 F.3d 125, 130 (6th Cir. 1994)).  A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.  *Thiokol Corp. v. Department of Treasury, State of Michigan, Revenue Div.,* 987 F.2d 376, 382-83 (6th Cir. 1993); *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

The Sixth Circuit does recognize a federal common-law claim for estoppel under ERISA:

> The elements of an equitable estoppel claim, as announced by the *Armistead* panel, are as follows: (1) there must be conduct or language amounting to a representation of material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment. *Id.* at 1298.
>
> Principles of estoppel, however, cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions. See *Fink v. Union Central Life Ins. Co.*, 94 F.3d 489, 492 (8th Cir. 1996); *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 458 n. 12 (11th Cir. 1996). There are at least two reasons for this. First, as we have seen, estoppel requires reasonable or justifiable reliance by the party asserting the estoppel. That party's reliance can seldom, if ever, be reasonable or justifiable if it is

> inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party. Second, to allow estoppel to override the clear terms of plan documents would be to enforce something other than the plan documents themselves. That would not be consistent with ERISA.

*Sprague v. General Motors Corp.*, 133 F.3d 388, 403 -404 (C.A.6 (Mich.),1998); see also *Marks v. Newcourt Credit Group*, 342 F.3d 444, 456 (6th Cir.2003) and *Zirnhelt v. Michigan Consol. Gas Co.*, 526 F.3d 282, 288 (6th Cir. 2008).

In the instant case, Defendants have put forth uncontested evidence that every policy potentially at issue contains the following anti-assignment provision:

> [Medical Mutual of Ohio] is authorized to make payments directly to Providers who have performed covered services to you. [Medical Mutual of Ohio] also reserves the right to make payment directly to you. When this occurs, you must pay the provider and [Medical Mutual of Ohio] is not legally obligated to pay any additional amounts. You cannot assign your right to receive payment to anyone else nor can you authorize someone else to receive your payments for you, including your Provider.

Doc. 10, ex. A. Because Plaintiffs' federal estoppel claim would be futile, the Court will deny Plaintiffs' motion to amend.

**VI.  Conclusion**

Because Plaintiffs' RICO claims are reverse-preempted by the McCarran-Ferguson Act, they are **DISMISSED WITH PREJUDICE**. Because Plaintiffs have not pleaded exhaustion of administrative remedies in their E.R.I.S.A. claim, it is **DISMISSED WITHOUT PREJUDICE**. Because an amendment to include a claim for estoppel under federal common law would be futile, Plaintiffs' request for permission to amend their complaint is **DENIED**. Although the surviving state law claims were properly brought in this Court by means of the supplemental jurisdiction provision of 28 U.S.C. § 1367, a court may decline such supplemental jurisdiction where the court

has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). The Court declines to exercise its supplemental jurisdiction over state law claims in this matter and **DISMISSES** the remaining claims **WITHOUT PREJUDICE**. The captioned cause is hereby **TERMINATED** upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, September 30, 2008.

                                                  s/Thomas M. Rose
                                          _____
                                                THOMAS M. ROSE
                                    UNITED STATES DISTRICT JUDGE